**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 10-7-DLB-CJS**

**KENNETH ROBIE**                                                                                    **PLAINTIFF**

**vs.**                                    **MEMORANDUM OPINION AND ORDER**

**SOUTHERN MARINE**
**CONSTRUCTION COMPANY, ET AL.**                                          **DEFENDANT**

* * * * * * * * * * * * * * * * * *

On January 17, 2013, the Court entered its Memorandum Opinion & Order granting Defendant Southern Marine Construction Company's Motion for Summary Judgment (Doc. # 125). Plaintiff Kenneth Robie now moves the Court to alter, amend or vacate its Order pursuant to Federal Rule of Civil Procedure 59(e) because this Court failed to consider genuine disputes as to issues of material fact and considered an issue sua sponte. (Doc. # 127). Plaintiff's motion has been fully briefed (Docs. # 128, 129), and is thus ripe for consideration. For the reasons set forth below, Plaintiff's motion is **DENIED**.

**I.       STANDARD OF REVIEW**

Rule 59(e) is intended to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings. *Gritton v. Disponett*, 332 F. App'x 232, 238 (6th Cir. 2009). "Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become

available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice." *Id.* (quoting *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (6th Cir. 1999)).  They should not be granted based on legal arguments or evidence that the movant failed to raise prior to the original entry of judgment.  *Dayton Newspapers, Inc.*, 190 F.3d at 445; *Martinez v. McGraw*, No. 3:08-0738, 2010 WL 1493846, at *2 (M.D. Tenn. Apr. 14, 2010).

## II.   ANALYSIS

Plaintiff alleges that the Court erred in concluding that there was no evidence that Southern Marine qua vessel owner breached any *Scindia* duty.  Specifically, Plaintiff contends that the Court erred in the following ways: (1) by sua sponte raising the issue of whether the condition of the plywood flooring was the kind of hazard that an expert and experienced construction company and its workers should have reasonably been expected to cope with safely during the course of performing its operations; (2) by ignoring evidence that the condition was the kind of hazard that an expert and experienced construction company and its workers would not reasonably have been expected to cope with safely during the course of performing its operations; (3) by ignoring evidence that Plaintiff was doing vessel-related tasks during the Mountaineer project; (4) by ignoring evidence that Plaintiff was doing vessel-related tasks during the Lonestar project and at the time of his injury; (5) by concluding that Southern Marine qua vessel owner provided an alternative location for Plaintiff to store the welding leads; and (6) by concluding that there is no evidence that any of the personnel working on the barge were engaged in seafaring work. Each of these arguments will be addressed in turn.

1.     **The Court did not sua sponte raise the issue of whether the condition of the plywood flooring was the kind of hazard that an expert and experienced construction company and its workers should have reasonably been expected to cope with safely during the course of performing its operations**

In its Memorandum Opinion and Order ("Opinion"), the Court primarily granted Southern Marine's request for summary judgment because Plaintiff failed to make his "additional showing" that the condition of the flooring was such that an expert and experienced construction company and its workers would not be able by the exercise of reasonable care to carry on its operations with reasonable safety to persons and property. (Doc. # 125, at 11-19).  This does not mean, though, that the Court raised the issue sua sponte.

At the outset, the Court notes that Southern Marine raised this issue at multiple points in its initial motion and reply.  For instance, in moving for summary judgment, Southern Marine generally argued that it did not breach any duty in its vessel capacity and then asserted as follows:

> A vessel-owner is not obligated to provide a vessel that is completely free from hazards, nor is the vessel-owner strictly liable to harbor-workers for unseaworthy conditions.  To the contrary, Scindia held that a vessel-owner owes longshoremen and harbor-workers the turn-over duty to exercise ordinary care under the circumstances to have the vessel and its equipment in such condition that an expert and experienced longshoreman/harbor-worker will be able, by the exercise of reasonable care, to carry out their operations with reasonable safety.

(Doc. # 84, at 16-17) (footnotes omitted).  More particularly, in its reply brief Southern Marine argued that "the evidence establishes that [it] satisfied its duty to turn over the vessel in its reasonably safe condition" and that "Plaintiff wants to improperly expand the turn-over duty to create unlimited and continuing liability for any allegedly hazardous

condition on the barge." (Doc. # 103, at 15). These arguments were made after Southern Marine again outlined the applicable standard of care. (*Id.* at 14).

Setting aside Southern Marine's briefing, both parties conceded during oral argument that they were disputing the first responsibility placed on vessel owners by the turnover duty, i.e., the responsibility of safe condition. This responsibility, of course, is the responsibility to turn over the ship in such condition that an expert and experienced employer can carry on operations with reasonable safety to persons and property. Based upon this concession and undisputed definition, the dispute between the parties must have been whether the condition of the plywood flooring was such that an expert and experienced employer could carry on operations with reasonable safety to persons and property in spite of that condition.

Although the reasons set forth above resolve Plaintiff's first argument, one related matter deserves further comment. Because Plaintiff believes the Court raised this issue sua sponte, Plaintiff attached the affidavits of himself and his expert witness, Larry Liberatore, and requested the Court to consider them as additional evidence. (Docs. # 127-1, 127-2). These affidavits need not be considered, as the Court has rejected Plaintiff's justification in support thereof.

**2.      The Court did not ignore evidence that the condition of the plywood flooring was the kind of hazard that an expert and experienced construction company and its workers would not reasonably have been expected to cope with safely during the course of performing its operations**

In addition to the affidavits, Plaintiff points to various testimony already included in the record that he believes satisfies the "additional showing" necessary to establish a

4

breach of the turnover duty.  (Doc. # 125, at 19).  This includes his own testimony, as well as that of his expert witness, Larry Liberatore, and one of his supervisors, Jim Davis.

Plaintiff first asserts that Liberatore testified that Southern Marine qua vessel owner violated three specific OSHA standards.  According to Plaintiff, these standards are important because they establish the standard of care a vessel owner should follow in turning over its ship.  In support of this argument, Plaintiff points to excerpts from the Ninth Circuit's decisions in *Ollestad v. Greenville S.S. Corp.*, 738 F.2d 1049 (9th Cir. 1984)  and *Subingsubing v. Reardon Smith Line, Ltd.*, 682 F.2d 779 (9th Cir. 1982), as well as the Sixth Circuit's decision in *Williams v. J.I. Case Co.*, No. 91-5706, 1992 WL 111809 (6th Cir. May 22, 1992) and the United States District Court for the District of Maryland's decision in *McGann v. Compania De Navegacio Maritima Netumar*, 586 F. Supp. 1568 (D. Md. 1984).

In its prior Opinion, the Court acknowledged that Liberatore "testified that the condition of the basement violated the [OSHA] regulation pertaining to the structural integrity of walking or working surfaces at construction sites."[1]  (Doc. # 125, at 17); (Doc. # 77-1, at 78-80, 90-92).   However, as pointed out in the Opinion, "Liberatore acknowledged that his opinion was limited to whether the condition violated an OSHA regulation; it was not a 'big picture best practice type of analysis.'"  (Doc. # 125, at 17); (Doc. # 77-1, at 104).  Moreover, the Court did not comment on the other two OSHA standards vaguely referred to by Plaintiff because he only pointed the Court to the portion

---

[1]  This regulation provides that "[t]he employer shall determine if the walking/working surfaces on which its employees are to work have the strength and structural integrity to support employees safely.  Employees shall be allowed to work on those surfaces only when the surfaces have the requisite strength and structural integrity."  29 C.F.R. § 1926.501(a)(2).

of testimony in which Liberatore testified that the condition violated the walking/working surfaces regulation, and he has not more specifically pinpointed that testimony in moving the Court to alter, amend or vacate.

Besides acknowledging Liberator's testimony, the Court also referenced almost all of the cases now relied upon by Plaintiff in "assum[ing], without deciding, that the OSHA regulations apply to Southern Marine qua vessel owner."[2, 3]   (Doc. # 125, at 17 & n.5). "However, even making that assumption and viewing the evidence in the light most favorable to Plaintiff"–including Liberator's testimony–the Court concluded that "he has failed to provide any evidence that Southern Marine qua vessel owner acted unreasonably under the circumstances presented."  (Doc. # 125, at 17-18).

The Court, then, did not ignore Liberator's testimony, and Plaintiff has failed to explain how the Court committed a clear error of law.  The Court simply does not agree with

---

[2]  Admittedly, in referencing *Williams*, the Court did not repeat the Sixth Circuit's assertion that "compliance with safety codes and standards may be probative of a manufacturer's standard of care."  1992 WL 111809, at *2, n.4 (citation omitted) (internal quotations and brackets omitted).  However, that case was not raised until the oral argument, and it concerns manufacturers–not vessel owners.

[3]  Plaintiff failed to cite *McGann* in briefing either of the summary judgment motions.  And because the District of Maryland reached its decision in *McGann* on June 15, 1984, the law announced therein was certainly well-settled while the summary judgment motions were being briefed.  As a result, Plaintiff cannot now rely on *McGann* to raise an argument he should have raised in briefing the motions.  *Martinez*, 2010 WL 1493846, at *2.  Instead, Plaintiff's reliance on *McGann* can only entitle him to relief under Rule 59(e) if the case demonstrates that the Court's holding amounted to a clear error of law.  *See Gritton*, 332 F. App'x at 238.

In *McGann*, the District of Maryland, in analyzing whether the absence of a handhold or grab on the underside of the escape hatch trunk cover constituted a breach of any *Scindia* duty, stated that "the applicable OSHA regulations envision that a solid coaming located near the head of the ladder can serve as an adequate handhold," and ultimately determined that there was no breach because the ship did not violate that regulation.  *McGann*, 586 F. Supp. at 1568, 1571.  Plaintiff argues that this rationale suggests that a violation of that regulation would at least yield an issue of fact, if not a breach as a matter of law.  This argument, of course, fails to even remotely suggest a clear error of law, especially since *McGann* is not controlling authority.

Plaintiff's assessment of the significance of his testimony, which is an issue proper for appellate review–not reconsideration.

With respect to Jim Davis, Plaintiff notes that the supervisor testified that he "didn't think it was a good idea to put the [welding] leads down [in the basement]," and that he responded that he "didn't want no one down [in the basement] walking around by their self" when prompted that he "had mentioned that [he] said [he] thought it would be too dangerous to go down there." (Doc. # 72-1, at 32, 51). According to Plaintiff, this shows that a Southern Marine supervisor felt that the condition of the plywood flooring was too dangerous for an experienced harbor worker to cope with safely.[4]

Although the Court did not identity these portions of testimony in its Opinion, it did note that Davis testified that Plaintiff was ultimately instructed to store the leads in the gang box above the deck, and not to go into the basement. (Doc. # 125, at 3); (Doc. # 72-1, at 29-31, 45). More importantly, Plaintiff's argument again reflects a fundamental misunderstanding of the Court's interpretation of the turnover duty–that a dangerous condition can be coped with by, among other things, avoiding, removing, or fixing the condition. (Doc. # 125, at 11-19). As with Liberator's testimony, this is an issue more proper for appellate review than reconsideration.

Finally, Plaintiff contends that his testimony shows that the condition of the flooring was such than an expert and experienced construction company would not reasonably

---

[4] Plaintiff actually argued that the testimony shows that a Southern Marine supervisor felt that the condition of the plywood flooring was too dangerous for an experienced *longshoreman* to cope with safely, but the Court assumes he meant an experienced *harbor worker* because the parties have agreed that Plaintiff was a non-stevedoring harbor worker–not a longshoreman. (Doc. # 125, at 8 n.2).

have been expected to cope with safely during the course of performing its operations.[5]

In support, he notes that he was ordered by Rodney Lemons, another supervisor, to store

the leads down in the basement.  (Doc. # 69-1, at 60-61).  However, the Court specifically

identified this portion of Plaintiff's testimony in its Opinion (Doc. # 125, at 3), and reiterates

that Plaintiff's appropriate vehicle for relief is an appeal.

###   3.   Plaintiff's argument that the Court ignored evidence that he was doing vessel-related tasks during the Mountaineer project is without merit

Plaintiff next complains that the Court failed to address the testimony indicating that

Rodney Lemons sent him into the basement to tear up portions of the plywood flooring

during the Mountaineer project.  (Doc. # 70-1, at 35-39); (Doc. # 71-1, at 20-1).  According

to Plaintiff, this tends to show that he was doing vessel-related tasks during that project.

Plaintiff's argument fails for the same reasons the Court rejected his contention that

Lemons was acting as an agent for Southern Marine qua vessel owner by sending Plaintiff

into the basement to dispose of rusted material during the Mountaineer Project:

> First, it ignores that vessel owners may rely on employers to avoid exposing their employees to unreasonable hazards, which includes remedying such hazards.  Second, even if this Court agreed with Plaintiff's characterization, it would be counterintuitive to conclude that Lemons instructed Plaintiff to store construction material in anything other than his construction superintendent capacity.  Lemons' earlier instruction to Plaintiff has no bearing this analysis, especially since it was given during a previous project.

(Doc. # 125, at 23 n.10).  Moreover, even if those reasons are invalid, Plaintiff has provided

no basis for reconsidering the Court's alternative grounds entering summary judgment as

---

[5] Plaintiff actually contended that his testimony shows that the condition of the flooring was such than expert and experienced *stevedore* would not reasonably have been expected to cope with safely during the course of performing its operations, but this case involves a *construction company*–not a longshoreman.  *See supra* note 4.

to the active control duty and the duty to intervene:

> With respect to the active control duty, Plaintiff has set forth no evidence that the basement remained under the active control of Southern Marine qua vessel owner, or that the hypothetical company actively involved itself in the construction project.  Furthermore, as to the duty to intervene, all of the evidence herein indicates that the basement was in its complained-of condition *prior* to turnover.

(*Id.* at 24).  This argument, then, is without merit.

### 4.   Plaintiff's argument that the Court ignored evidence that he was doing vessel-related tasks during the Lonestar project and at the time of his injury is without merit

Besides the Mountaineer Project, Plaintiff also points to testimony that shows he was doing vessel-related tasks during the Lonestar project and at the time of his injury.  With respect to the Lonestar project, he notes testimony indicating that he was sent down to the basement approximately 15 to 20 times during the month he was injured (Doc. # 69-1, at 53-54), and that one of the reasons for those trips was to plug holes to keep the ship from leaking.  (Doc. # 71-1, at 30-1).  As to the time of injury, Plaintiff draws the Court's attention to Lemons' testimony that the construction crew was in the process of cleaning up, and that during the morning meeting they discussed cleaning up the barge and putting everything up and getting ready for transport.  (Doc # 70-1, at 67).  According to Davis' testimony, this included picking up the welding leads, straps, and cutting outfits, which were always gathered and locked away over the weekend and when getting ready to transport a barge. (Doc. # 72-1, at 34).

As with Liberator's testimony offered to show the dangerousness of the plywood flooring, the Court simply does not agree with Plaintiff's assessment of the significance of this testimony, and thus will not deviate from its conclusion that Plaintiff was storing the

welding leads pursuant to his construction duties.  (Doc. # 125, at 23 & n. 9).  Moreover, as noted in the preceding section, Plaintiff has provided no basis for reconsidering the Court's alternative grounds entering summary judgment as to the active control duty and the duty to intervene.  (*Id.* at 24).  This argument is also without merit.

### 5.   Plaintiff's argument that the Court erred concluding that Southern Marine qua vessel owner provided an alternative location for Plaintiff to store the welding leads is without merit

Plaintiff also takes issue with the Court's statement that "[t]he more appropriate question, then, is whether the vessel owner provided an alternative location to store the leads, and the uncontested evidence in this case is that material could have been stored in the gang box above the deck."  (Doc. # 125, at 18 n.6).  According to Plaintiff, there is no evidence that Southern Marine qua vessel owner provided an alternative location for Plaintiff to perform his tasks.  Stated differently, he argues that the evidence does not establish that the gang box was placed on the barge by Southern Marine qua vessel owner, or by Southern Marine in any capacity.

Assuming the Court is correctly reading his argument, Plaintiff is not contesting that Lemons and Davis testified that Plaintiff was ultimately instructed to store the leads in the gang box above the deck (Doc. # 125, at 3) (Doc. # 70-1, at 67-68, 76) (Doc. # 72-1, at 29-31), but rather that there is no evidence that Southern Marine qua vessel owner placed that storage device on the barge.  While this may be true, it is much ado about nothing.

As reiterated earlier in this Opinion, a dangerous condition can be coped with by, among other things, avoidance.  (Doc. # 125, at 11-19).  And the existence of the gang box, whether provided by Southern Marine qua vessel owner or in some other capacity or even by some third party, constituted a means of avoiding the basement.  Any argument to the

contrary should be presented to the Sixth Circuit.

> **6.    Plaintiff's argument that the Court erred in concluding that there is no evidence that any of the personnel working on the barge were engaged in seafaring work**

Plaintiff next contests the Court's conclusion that "there is no evidence that any of the personnel working on the barge were 'engaged in seafaring work.'" (Doc. # 125, at 23). In support, he again notes Lemons' testimony that the construction crew was in the process of cleaning up, and that during the morning meeting they discussed cleaning up the barge and putting everything up and getting ready for transport.  (Doc # 70-1, at 67).  However, the Court already sufficiently addressed this testimony in rejecting Plaintiff's argument that the Court ignored evidence that he was doing vessel-related tasks during the Lonestar project and at the time of his injury, and thus will not consider it further.

## III.    PUBLIC POLICY ARGUMENT

Besides his more specific allegations of error, Plaintiff generally argues that the Court should vacate its order as a matter of public policy because it penalizes harbor workers for attempting to mitigate hazards that may arise in their work environment. However, this Court is bound to adhere to Sixth Circuit precedent, which it has done.  This argument, then, merits no further consideration.

## IV.    CONCLUSION

Accordingly, for all of these reasons,

**IT IS ORDERED** that Plaintiff's Motion to Alter, Amend, or Vacate (Doc. # 127) is hereby **denied**.  For this reason, the Court will not consider the affidavits of Kenneth Robie and Larry Liberatore.  (Docs. # 127-1, 127-2).

11

This 15th day of April, 2013.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Covington\2010\10-7 Order RE Mt to Reconsider.wpd